## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     *Plaintiff,*

     v.

APPROXIMATELY $10,128,847.42 SEIZED FROM
US BANK ACCOUNT NO. -5234 HELD IN THE
NAME OF PUEBLO OF POJOAQUE GAMING FUNDS,

     *Defendant-in-rem.*

**Civ. No.** 18-279

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, brings this complaint in accordance with Rule G(2)

of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture

Actions, and alleges as follows:

### NATURE OF THE ACTION

1.    This is a civil action to forfeit and condemn to the use and benefit of the United

States of America property used in violations of 18 U.S.C. § 1955 and constituting proceeds of

violations of 18 U.S.C. § 1955 that is subject to forfeiture pursuant to 18 U.S.C. § 1955(d) and

18 U.S.C. § 981(a)(1)(C).

2.    Section 1955 is a general criminal statute of nationwide applicability, including

Indian country, notwithstanding its incorporation of State gambling law by reference. Moreover,

Title 18, United States Code, Section 1166 expressly renders State gambling law applicable to

Indian country, and subjects violations thereof to federal prosecution.

## DEFENDANT *IN REM*

3.      The defendant *in rem* consists of the following:

a)      Approximately $10,128,847.42 in funds seized from US Bank Account No. -5234 held in the name of Pueblo of Pojoaque Gaming Funds (hereafter referred to as "Defendant Funds").

4.      The Defendant Funds were seized by the Federal Bureau of Investigation pursuant to a judicially-authorized seizure warrant on February 9, 2018, in the District of New Mexico.

5.      The Defendant Funds are now, and during the pendency of this action will be, in the jurisdiction of this Court.

## JURISDICTION AND VENUE

6.      The United States District Court for the District of New Mexico has subject matter jurisdiction under 28 U.S.C. §§ 1345, 1355(a) and 1356.

7.      Venue for this civil forfeiture action is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395, as acts or omissions giving rise to the forfeiture took place in this district and the property is found in this district. Upon the filing of this complaint, the Defendant Funds will be arrested by execution of a Warrant for Arrest *In Rem* in the District of New Mexico.

## FACTS

8.      The Pueblo of Pojoaque entered into a gaming compact with the State of New Mexico in 1997, and again in 2005. The compact entered into in 2005, which provided for revenue sharing with the State in the amount of 8% of gross gaming revenue, had an expiration date of June 30, 2015. In 2015, the State of New Mexico promulgated a new form gaming compact which, among other things, increased the amount of revenue sharing by the gaming tribes. The Pueblo of Pojoaque declined to accept the 2015 form compact, and instead sought to

negotiate a new compact with the State.  The Pueblo and the State were unable to agree on a new

compact.  This impasse resulted in the Pueblo filing two different lawsuits against the State, both

entitled Pueblo of Pojoaque v. State of New Mexico, and the State filing suit against the U.S.

Department of the Interior, entitled New Mexico v. Department of the Interior, et al., in which

the Pueblo of Pojoaque was an Intervenor.  One of the Pueblo's suits against the State and the

State's suit against Interior were still pending on the date the Pueblo's compact expired, namely,

June 30, 2015.

9.      On June 28, 2015, the Governor of the Pueblo of Pojoaque contacted then-United

States Attorney Damon Martinez by letter, saying that the Pueblo planned to continue engaging

in Class III gaming after the expiration of the compact, and asking the United States to put off

bringing any enforcement action until litigation in the State's suit against Interior was completed.

The United States Attorney responded by letter on June 30, 2015, advising the Governor that

engaging in Class III gaming without a compact would be illegal, but agreeing to forebear from

bringing an enforcement action against the Pueblo during the pendency of the Interior litigation,

provided that certain conditions were met.  The conditions included payment by the Pueblo of

the money that would otherwise have been paid to the State of New Mexico as revenue sharing

into a trust, in the care of an independent trustee, who would only be able to disburse these funds

for specified purposes, including eventual distribution pursuant to a new compact or as might

otherwise be determined by a court.

10.     In a public statement issued on June 30, 2015, the United States Attorney

explained that his purposes in agreeing to forebear from enforcement action despite the Pueblo's

engagement in illegal casino-style gambling without a compact were (i) to maintain the status

quo to the extent feasible, (ii) to protect the interests of all residents of the Pojoaque Valley, (iii)

to shield the other gaming tribes of New Mexico from unfair competitive disadvantage, and (iv) to safeguard funds that would have gone to the State of New Mexico as revenue sharing had the expiring compact been extended.

11.     The United States Attorney's public statement went on to explain that representatives of the State had advised him that they could not accept payment of revenue sharing funds from Pojoaque Pueblo on gaming proceeds obtained after June 30 in the absence of a valid compact.  The United States Attorney further explained that, in keeping with his decision to maintain the status quo during the pendency of the litigation to the extent feasible, the competitive disadvantage at which other gaming tribes would be placed if the Pueblo of Pojoaque were to conduct casino-style gaming without making revenue sharing payments would be mitigated by the Pueblo's depositing of funds that would have gone to revenue sharing into an account overseen by an independent trustee for eventual distribution pursuant to a negotiated compact or other appropriate court action, after resolution of the pending litigation.

12.     Pursuant to the exchange of letters described in the paragraphs immediately above, the Pueblo of Pojoaque entered into a trust agreement with Thomas F. Gede, Esq. ("Gede") on August 24, 2015, for the creation of a trust to be called the Pueblo of Pojoaque Gaming Funds Trust, and for Gede to be the trustee.  The trust agreement required Gede to provide to the Pueblo of Pojoaque and the United States Attorney for the District of New Mexico a monthly account of the trust, providing information relating to the trust property, liabilities, receipts and disbursements.

13.     On or about July 1, 2015, the Pueblo began depositing funds into a trust account from gaming revenue generated on the Pueblo's lands that would otherwise have been paid to the State under the 2005 Compact.  From the time of Gede's appointment as trustee, he has provided

monthly reports of the trust property. The monthly reports have included monthly bank

statements that, among other information, include the name of the bank at which the trust

account is maintained: US Bank, and the bank account number of the trust account:

No. -5234. The bank statements also reflect that the name of the account is Pueblo of Pojoaque

Gaming Funds.

14.    On August 2, 2017, the New Mexico v. Department of the Interior litigation

concluded when the Tenth Circuit issued its mandate, having ruled adversely to the Interior

Department and the Pueblo. The Pueblo subsequently advised the United States Attorney that it

would sign the State of New Mexico's 2015 form compact, and asked the government to

continue forbearing from bringing enforcement action for a reasonable period of time while the

new compact was reviewed by the State and by the Secretary of the Interior.

15.    On August 28, 2017, Acting United States Attorney James D. Tierney wrote a

letter to the Governor of the Pueblo of Pojoaque, agreeing to a further extension of time until

October 30, 2017, before bringing an enforcement action. In his letter, the Acting U.S. Attorney

wrote as follows:

> My purpose in providing this additional window of time is to
> give the Pueblo and the State a reasonable opportunity to come
> to an agreement as to the future of Class III gaming at Pojoaque.
> Disposition of the funds currently held in escrow is also a relevant
> matter in this dispute, particularly in light of the commitment in
> 2015 to place funds, which would otherwise have been paid to the
> State of New Mexico as revenue sharing, into a trust. Please be
> advised that the Pueblo's Class III gaming activities may be subject
> to enforcement proceedings if a compact is not signed by both
> parties, and there is no agreement as to the disposition of the
> escrowed funds by October 30, 2017.

16.    Representatives of the Pueblo of Pojoaque and New Mexico Governor Susana

Martinez subsequently signed the 2015 form compact, which was then submitted to the Secretary

of the Interior.  The new compact became effective on October 26, 2017, when such notice was published in the Federal Register.

17.     Although the Pueblo and the State agreed on a new compact, they did not reach any agreement as to disposition of the funds in the Trust.

18.     On November 9, 2017, the Pueblo of Pojoaque filed a Verified Petition for Declaratory Judgment on Disposition of Gaming Trust Funds in the Tribal Court of the Pueblo of Pojoaque.  The petition sought a declaratory judgment that all of the funds in the Pueblo of Pojoaque Gaming Funds Trust should be disbursed to the Pueblo alone, to provide for the general welfare of the Pueblo and its members, and to promote Tribal economic development.  Simultaneously with filing its Verified Petition, the Pueblo filed a Motion for Summary Judgment, alleging that no facts were in dispute, and that Gede, the Trustee, did not oppose the relief sought.

19.     In its Verified Petition, the Pueblo acknowledged that the funds in the Gaming Fund Trust were proceeds of its uncompacted gaming operations, and that the funds had been deposited into the Trust account as part of an agreement with the U.S. Attorney's Office to withhold enforcement action.  The Verified Petition included the following admission:

> Since July 1, 2015, the Pueblo has been depositing into the Trust Account and Trustee has held and administered monthly payments from gaming revenue generated on the Pueblo's lands that otherwise would have been paid to the State under the 2001 Compact before July 1, 2015, and which would have been assessed by and paid to Pueblo under the Gaming Tax Ordinance after June 30, 2015. As of the date of this filing [that is, November 9, 2017], those deposits, minus applicable expenses and monthly fees incurred by and paid to Trustee, total $9,915,906.86.  During that period, Trustee has been paid from the Trust Funds $92,599.32 for administration of the Trust Funds under the Trust Agreement.

Petition, at ¶ 11.

20.     As of Gede's most recent monthly account of the trust, dated February 18, 2018, the balance in the trust account as of January 31, 2018, was $10,128,847.42.

21.     On November 13, 2017, Acting U.S. Attorney Tierney wrote a letter to representatives of the Pueblo and the State, reiterating the importance of determining the disposition of the funds in the Pojoaque Gaming Funds Trust.  The Acting U.S. Attorney directed the Pueblo and the State to take notice that his decision to withhold enforcement action in this matter until October 30 had expired, and that, in the event of continued failure to reach an agreement as to the disposition of the funds, he would consider the possibility of taking further action in this matter, including assessing whether the Trust Fund monies constitute proceeds of illegal gambling obtained in violation of 18 U.S.C. § 1955, rendering them subject to civil forfeiture.

22.     The Pueblo operated its Class III gaming facilities on a substantially continuous basis at all times material hereto, notwithstanding the Pueblo not having a valid gaming compact in effect from July 1, 2015, until October 26, 2017.

23.     At all times material hereto, the Pueblo of Pojoaque operated at least two gaming facilities, namely, Buffalo Thunder and Cities of Gold.  Each of these was a substantial operation that involved five or more persons who conducted gambling business.  Upon information and belief, the Pueblo also operated a third gaming facility, called Jake's Place.

24.     All of the Defendant Funds are proceeds of illegal gambling, as they consist of eight percent of the net win from Class III gaming that took place on the Pueblo's land between the expiration of the 2005 compact and the effective date of the 2017 compact.  These funds would have been paid to the State as revenue sharing had the 2005 compact been extended.

7

25.      The Pueblo and the State have not reached any agreement between themselves as to disposition of the funds in the Pojoaque Gaming Funds Trust.

## FIRST CLAIM FOR RELIEF

26.      The United States incorporates by reference the allegations in paragraphs 1 through 25 as though fully set forth.

27.      Title 18, United States Code, Section 1955(d) subjects to forfeiture "[a]ny property, including money, used in violation of the provisions of [18 U.S.C. § 1955]."

28.      The Defendant Funds were used in violation of the provisions of 18 U.S.C. § 1955 and are thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 1955(d).

## SECOND CLAIM FOR RELIEF

29.      The United States incorporates by reference the allegations in paragraphs 1 through 25 as though fully set forth.

30.      Title 18, United States Code, Section 981 (a)(1)(C) subjects to forfeiture "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to...any offense constituting "specified unlawful activity" (as defined by 18 U.S.C. § 1956(c)(7)) or a conspiracy to commit such offense."

31.      An offense in violation of 18 U.S.C. § 1955 constitutes "specified unlawful activity" as defined by 18 U.S.C. § 1956(c)(7).

32.      The Defendant Funds constitute or are derived from proceeds traceable to offenses(s) in violation of 18 U.S.C. § 1955 and are thus subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE: Plaintiff seeks arrest of Defendant Funds and forfeiture of same to Plaintiff, determination of the validity and priority of claims of any Claimants and any Unknown

Claimants to the Defendant Funds, costs and expenses of seizure and of this proceeding, and other proper relief.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

JONATHON M. GERSON
STEPHEN R. KOTZ
Assistant U.S. Attorneys
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274

9

## 28 U.S.C. § 1746 DECLARATION

I am a Special Agent with the Federal Bureau of Investigation who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Dated:  03/21/2018

Michael Marycz, Special Agent
Federal Bureau of Investigation

10

JS 44 (Rev. 12/12)                                    CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

United States of America

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

**DEFENDANTS**

APPROXIMATELY $10,128,847.42, ET. AL.

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
          THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☒ 1  U.S. Government     ☐ 3  Federal Question
       Plaintiff                      *(U.S. Government Not a Party)*

☐ 2  U.S. Government     ☐ 4  Diversity
       Defendant                    *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                              *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>  & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>  Student Loans<br>  (Excludes Veterans)<br>☐ 153 Recovery of Overpayment<br>  of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>  Liability<br>☐ 320 Assault, Libel &<br>  Slander<br>☐ 330 Federal Employers'<br>  Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>  Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>  Product Liability<br>☐ 360 Other Personal<br>  Injury<br>☐ 362 Personal Injury –<br>  Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury -<br>  Product Liability<br>☐ 367 Health Care/<br>  Pharmaceutical<br>  Personal Injury<br>  Product Liability<br>☐ 368 Asbestos Personal<br>  Injury Product<br>  Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>  Property Damage<br>☐ 385 Property Damage<br>  Product Liability | ☐ 625 Drug Related Seizure<br>  of Property 21 USC 881<br>☒ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>  28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>  Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/<br>  Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information<br>  Act<br>☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>  Accommodations<br>☐ 445 Amer. w/Disabilities -<br>  Employment<br>☐ 446 Amer. w/Disabilities -<br>  Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate<br>  Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee -<br>  Conditions of | ☐ 710 Fair Labor Standards<br>  Act<br>☐ 720 Labor/Management<br>  Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical<br>  Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement<br>  Income Security Act | ☐ 870 Taxes (U.S.<br>  Plaintiff or<br>  Defendant)<br>☐ 871 IRS—Third Party<br>  26 USC 7609 | Act/Review or Appeal of<br>  Agency Decision<br>☐ 950 Constitutionality of<br>  State Statutes |
| | | | **IMMIGRATION** | | |
| | | | ☐ 462 Naturalization Application<br>☐ 465 Other Immigration<br>  Actions | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original      ☐ 2 Removed from    ☐ 3 Remanded from   ☐ 4 Reinstated or  ☐ 5 Transferred from    ☐ 6 Multidistrict
    Proceeding          State Court          Appellate Court        Reopened         Another District          Litigation
                                                                                             *(specify)*

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. § 1955(d) and 18 U.S.C. § 981(a)(1)(C).

Brief description of cause:

**VII. REQUESTED IN**     ☐ CHECK IF THIS IS A **CLASS ACTION**     **DEMAND $**              CHECK YES only if demanded in complaint:

**COMPLAINT:**          UNDER RULE 23, F.R.Cv.P.                                              **JURY DEMAND:** ☐ Yes   No

**VIII. RELATED CASE(S) IF ANY**   *(See instructions):*   JUDGE _____ DOCKET NUMBER _____

DATE                              SIGNATURE OF ATTORNEY OF RECORD
3/23/2018

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE